United States District Court
District of South Dakota
Central Division

**FILED**

JUN 2 9 2017

CLERK

| | |
|---|---|
| Jason Riis, Cody Holcombe, Aaron Henning, Gena Alvarez, and Dirk Sparks, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) ) |
| John Does One through Twenty, Matthew Shaver in his personal capacity, the City of Pierre, and the City of Sisseton, | ) ) ) ) ) |
| | ) |
| Defendants. | ) ) |

Civ. 17- 3017

## Complaint and Demand for Jury Trial

### Parties and Jurisdiction

1.      All plaintiffs are citizens of South Dakota, except Gena Alvarez, who

is a citizen of Nebraska.

2.      John Does One through Twenty are members of the City of Pierre Police

Department, the City of Sisseton Police Department, or the South Dakota Highway

Patrol.  Matthew Shaver is a member of the City of Pierre Police Department and is

sued in his personal capacity.  In doing all acts alleged below, all defendants acted

under color of state law.

3.      The court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.

4.      Joinder of plaintiffs' cases is appropriate because they assert a right to relief arising out of the same series of transactions and occurrences, namely, the forcible catheterization of human beings by defendants and their agents, and questions of law and fact common to them will arise in the action.   F.R.Civ.P. 20(a)(1).

### Facts Common to All Plaintiffs

5.      Forced catheterization is painful, humiliating and deeply degrading.

6.      Urinary catheterization should be avoided where possible, because of the risks it creates of injury to the person.

7.      Forced urinary catheterization is even more dangerous.

8.      Forced urinary catheterization has only a marginal advantage over a simple blood draw in detecting the prior use of amphetamine or methamphetamine, and its residual presence in the body.

9.      Society has a low interest in detecting the prior use of marijuana, and its residual presence in the body.

10.     Several facts that demonstrate society's low interest in the prior use of marijuana are that two of the last four Presidents of the United States have admitted

2

that they used marijuana; penalties for having marijuana in one's body are minor; and penalties for possessing small amounts of marijuana are minor.

11.     Forced catheterization creates a risk of psychologically traumatizing a person.

12.     A substantial number of drug suspects and users have been physically or sexually traumatized.

13.     A person who has been physically or sexually traumatized is subject to a significant risk of retraumatization by being forcibly catheterized.

14.     A large number of people arrested have post-traumatic stress disorder (PTSD).

15.     A substantial number of people with additional problems have a history of victimization or prior trauma.

16.     The drug-using population is at significant risk of retraumatizing by being forcibly catheterized, with a resulting greater negative effect on their lives.

17.     The more a person has been traumatized, the more likely that later trauma (such as by being forcibly catheterized) will cause an increase in their PTSD.

18.     The incidence of PTSD among illegal drug users is high.

3

19.     PTSD causes both numbness and hypervigilance, and people use illegal drugs to medicate this.

20.     Illegal drug use among people with PTSD is 2-3 times greater than the rest of the population.

21.     A police officer has no way to tell whether a person who is being considered for forcible catheterization has or has not been physically or sexually traumatized, or suffers from PTSD.

22.     Forced catheterization has been widely used in some parts of South Dakota in recent years.

23.     The threat of forced catheterization is commonly used in some parts of South Dakota in recent years to motivate persons to provide coerced urine samples.

24.     The particularity requirement of a search warrant application and search warrant was violated for each and every plaintiff.

25.     In no search warrant application or search warrant, did the police disclose to the Magistrate or Judge that forced catheterization was sought.

26.     No search warrant authorized forced catheterization.

27.     A search warrant application, or a search warrant, that fails to disclose that it seeks forcible catheterization is a general warrant that lacks a sufficiently

4

particularized description of the person or thing to be seized or the place to be searched.

28.     No search warrant application disclosed the physical or psychological risks of forcible catheterization, or the marginal benefit to society of forced catheterization.

29.     No search warrant application disclosed the high incidence of PTSD and prior abuse among suspected drug users, the potential for retraumatizing them by forced catheterization, or the potential of forced catheterization to inflict increasingly damaging symptoms of PTSD and an increasingly likelihood that these people would use illegal drugs in the future to medicate their increased PTSD.

30.     According to the Attorney General of South Dakota, Marty Jackley, who oversees the  South Dakota Division of Criminal Investigation, as quoted in the Sioux Falls Argus Leader on April 7, 2017, his "agents would only pursue forced urine samples in 'exceptional' circumstances, such as a fatal vehicular homicide case in which drugs are suspected to be a factor."

## Facts Common to All Plaintiffs re: Conspiracy

31.     State agents, including law enforcement officers, in multiple cities and counties in South Dakota have conspired to attempt to rationalize, justify, and illegally forcibly catheterize drug suspects, and illegally coerce drug suspects to provide urine samples by threatening them with illegal forcible catheterization if they will not voluntarily provide a urine sample.

32.     The conspiracy includes written and oral communications, discussions of strategy, and exchange of written forms, such as search warrant applications and search warrants, intended to justify forced catheterization.

33.     The conspiracy resulted in violating the civil rights of everyone who was threatened with forcible catheterization or who was forcibly catheterized.

34.     State agents and law enforcement officers who have participated in this conspiracy include but are not limited to state agents and law enforcement officers in Roberts County, in Sisseton, in Hughes County, in Pierre, in Winner, in Tripp County, in Lakes Andes, in Charles Mix County, in Wagner, in Platte, in Mobridge, and in other jurisdictions unknown at this time to plaintiffs.

35.     According to Tim Whalen, a Lake Andes attorney quoted in the Sioux Falls Argus Leader on July 1, 2016, the Wagner and Platte hospitals "conduct the

6

procedure [forced catheterization] on a regular basis," without anesthesia, and "There's a lot of screaming and hollering."

36.     According to the same article, Pam Hein, an attorney in Lake Andes, said the practice of forced catheterization "has been going on for years."

37.     According to the same article, Ms. Hein stated: "Often an officer will have suspicion of drug use, request the warrant for testing and get the test before any reports on a drug violation charge lands on a prosecutor's desk."

38.     According to the same article, Ms. Hein stated that many suspects succumb to the threat of forced catheterization by providing a urine sample without being forcibly catheterized.

39.     Some or all of the defendants routinely use forced catheterization, even where there is evidence of marijuana use only, and no evidence of use of any other type of drug.

40.     The extent of the illegal conspiracy, including the extent of forcible catheterization, the extent of suspects succumbing to the threat of forcible catheterization by providing a urine sample without being forcibly catheterized, and the nature, extent, and specifics of the conspiracy among State agents, including law enforcement officers, and among medical staff acting as agents of law enforcement,

7

in multiple cities and counties in South Dakota, can only be learned through discovery.

## Facts—Forcible Catheterization of Jason Riis

41.     Jason Riis was forcibly catheterized by John Does One through Twenty of the City of Pierre Police to search for drugs in his urine.

42.     Mr. Riis was arrested during a traffic stop in Pierre.  He was asked to voluntarily give a urine sample and refused, then detained while a search warrant was obtained.

43.     After a search warrant was obtained, Mr. Riis agreed to give a urine sample without being forcibly catheterized.

44.     John Does One through Twenty refused to allow Mr. Riis to give a urine sample voluntarily, instead insisting on forcibly catheterizing him.

45.     John Does One through Twenty's refusal to allow Mr. Riis to give a urine sample voluntarily was unconstitutional, and was carried out solely and exclusively for the purpose of gratifying their personal sadistic desires.

46.     The procedure was videotaped.

8

47.     The forcible catheterization caused Riis humiliation, degradation, unnecessary pain, difficulty urinating, and emotional distress, both at the time and later.

48.     John Does One through Twenty followed the standard procedures and widespread, common, customary practices of the Pierre Police Department, which they have used before, and which they will continue to use unless and until restrained by this Court.

49.     Riis's interests in privacy and security—and in particular the privacy and security of the most private part of his body, his genitals, both their exterior and interior—outweigh society's interest (if society has any legitimate interest considering the potential alternatives)—in conducting the procedure under these circumstances. *See Winston v. Lee*, 470 U.S. 753 (1985).

### Facts—Forcible Catheterization of Cody Holcombe

50.     Cody Holcombe was forcibly catheterized by John Does One through Twenty of the City of Pierre Police to search for drugs in his urine.

51.     After a search warrant was obtained, Mr. Holcombe agreed to give a urine sample voluntarily, and drank two cups of water provided to him to attempt to enable himself to urinate voluntarily.

9

52.     Mr. Holcombe was unable to urinate immediately.

53.     John Does One Through Twenty told him "you're taking too long," and forcibly catheterized him.

54.     John Does One through Twenty's refusal to allow Mr. Holcombe to give a urine sample voluntarily was unconstitutional, and was carried out largely for the purpose of gratifying their personal sadistic desires.

55.     Mr. Holcombe does not know whether the procedure was videotaped.

56.     The forcible catheterization caused Holcombe humiliation, degradation, unnecessary pain, difficulty urinating, blood in his urine, and emotional distress, both at the time and later.

57.     John Does One through Twenty followed the standard procedures and widespread, common, customary practices of the Pierre Police Department, which they have used before, and which they will continue to use unless and until restrained by this Court.

58.     Holcombe's interests in privacy and security—and in particular the privacy and security of the most private part of his body, his genitals, both their exterior and interior—outweigh society's interest (if society has any legitimate

interest considering the potential alternatives)—in conducting the procedure under these circumstances. *See Winston v. Lee,* 470 U.S. 753 (1985).

### Facts—Forcible Catheterization of Aaron Henning

59.    Aaron Henning was forcibly catheterized by John Does One through Twenty of the Sisseton Police Department to search for drugs in his urine.

60.    No facts justified the issuance of a search warrant for Mr. Henning's urine.

61.    Mr. Henning was found in a home in Roberts County where marijuana was found.

62.    No marijuana or other drugs were found on Mr. Henning.

63.    An affidavit for a search warrant sought a "Urine sample from everyone present at the time probation agents and Chief Croymans entered the residence."

64.    Mr. Henning's name is not even mentioned in the affidavit.

65.    A Magistrate issued a search warrant for a "Urine sample from everyone present at the time probation agents and Chief Croymans entered the residence."

66.    Mr. Henning's name is not even mentioned in the search warrant.

11

67.     Mr. Henning's presence in a home in which marijuana was found is insufficient to justify a forcible catheterization, because of society's lower interest in prosecuting residual marijuana in the body, and the other facts described above.

68.     The forcible catheterization caused Henning humiliation, degradation, unnecessary pain, difficulty urinating, and emotional distress, both at the time and later.

69.     John Does One through Twenty followed the standard procedures and widespread, common, customary practices of the Sisseton Police Department, which they have used before, and which they will continue to use unless and until restrained by this Court.

70.     Henning's interests in privacy and security—and in particular the privacy and security of the most private part of his body, his genitals, both their exterior and interior—outweigh society's interest (if society has any legitimate interest considering the potential alternatives)—in conducting the procedure under these circumstances. *See Winston v. Lee*, 470 U.S. 753 (1985).

71.     In the same home entry described above, the police found numerous other people present, and also obtained illegal warrants for urine samples to be taken from them.

### Facts—Forcible Catheterization of Gena Alvarez

72.     Gena Alvarez was forcibly catheterized by John Does One through Twenty of the South Dakota Highway Patrol, which is part of the South Dakota Department of Public Safety, and which acts on its behalf, to search for drugs in her urine.

73.     There was no probable cause that Alvarez had used any drug other than marijuana.

74.     Ms. Alvarez is a survivor of long-term abuse as a child.

75.     The forcible catheterization brought back to her the long-term abuse she suffered as a child.

76.     Male police officers inspected Alvarez's genitals during the forcible catheterization, which was unnecessary, humiliating and served no legitimate state interest.

77.     The forcible catheterization caused Alvarez humiliation, degradation, unnecessary pain, difficulty urinating, and emotional distress, both when it occurred and later.

78.     John Does One through Twenty followed the standard procedures and widespread, common, customary practices of the South Dakota Highway Patrol,

13

which they have used before, and which they will continue to use unless and until restrained by this Court.

79.     Alvarez's interests in privacy and security—and in particular the privacy and security of the most private part of her body, her genitals, both their exterior and interior—outweigh society's interest (if society has any legitimate interest considering the potential alternatives)—in conducting the procedure under these circumstances.  *See Winston v. Lee*, 470 U.S. 753 (1985).

## Facts—Forcible Catheterization of Dirk Sparks

80.     Dirk Sparks was forcibly catheterized by John Does One through Twenty and Matthew Shaver, all of the City of Pierre Police, to search for drugs in his urine.

81.     The officer who sought and obtained the search warrant, Matthew Shaver, had never been trained on the particularity requirement of a search warrant:

> Q.     [Mr. Lund]  You testified about reading cases and training on search warrants, correct?
>
> A.     [Officer Shaver]  Yes.
>
> Q.     [Mr. Lund]  Did that include training on the particularity requirement of the search warrant?
>
> A.     [Officer Shaver]  No.  Not that I know of.

14

> *State v. Sparks*, Hughes County File Cri16-218, Suppression
> Hearing, June 10, 2016, p. 33.

82.     The forcible catheterization caused Sparks humiliation, degradation,

unnecessary pain, difficulty urinating, and emotional distress, both at the time and

later.

83.     John Does One through Twenty followed the standard procedures and

widespread, common, customary practices of the Pierre Police Department, which

they have used before, and which they will continue to use unless and until

restrained by this Court.

84.     Sparks' interests in privacy and security—and in particular the privacy

and security of the most private part of his body, his genitals, both their exterior and

interior—outweigh society's interest (if society has any legitimate interest

considering the potential alternatives)—in conducting the procedure under these

circumstances. *See Winston v. Lee*, 470 U.S. 753 (1985).

### First Cause of Action—Violation of Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America

85.     All paragraphs above are incorporated herein by this reference.

86.     Defendants violated the Fourth, Fifth, and Fourteenth Amendment

constitutional rights of all plaintiffs to be free from unreasonable search and seizure,

unreasonable and excessive use of force, and unreasonable and excessive infliction of physical and emotional distress.

87.     Defendants violated 42 U.S.C. § 1983 by under color of the statutes, ordinances, regulations, customs, or usages of the State of South Dakota, subjecting and causing to be subjected, plaintiffs to the deprivation of rights, privileges, or immunities secured by the Constitution and laws. The widespread practice of forcible catheterization is well-known to the policymaking officials of each of the defendants and the practice is so permanent and well-settled that it constitutes an official custom with the force and effect of law.

88.     Defendants violated 42 U.S.C. § 1985(3) by conspiring with each other for the purpose of depriving numerous people of the equal protection of the laws, and equal privileges and immunities under the laws; and by engaging therein to do, and causing to be done, acts in furtherance of the object of such conspiracy, whereby others were injured in their person or property; and by depriving numerous people from having and exercising the rights and privileges of citizens of the United States.

89.     A search warrant affidavit that does not disclose that it seeks forcible catheterization cannot constitutionally justify forcible catheterization.

16

90.     A search warrant that does not state that it authorizes forced catheterization does not do so.

91.     Defendants acted with malice, oppression, and deliberate and reckless disregard for plaintiffs' rights.

92.     Defendants acted in accordance with their official and standard practices, policies, and procedures.

93.     Plaintiffs are entitled to an award of punitive damages as the only way to punish defendants and to deter them from continuing to employ these same wrongful methods and tactics against other people.

### The Defense of Qualified Immunity, to the Extent it Applies, Should be Decided in a Two-Part Analysis

94.     The defense of qualified immunity, which defendants are certain to assert, to the extent that it applies, should be decided in a two part-analysis. First, whether defendants' conduct was illegal. Second, if it was illegal, did it violate a constitutional right that was clearly established at the time of the forced catheterizations.

95.     The defense of qualified immunity, to the extent it applies, should fail, because defendants' conduct violated a constitutional right that was clearly established at the time of the forced catheterizations.

17

## Second Cause of Action—*Monell* Violations of Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America

96.     All paragraphs above are incorporated herein by this reference.

97.     The City of Pierre, the City of Sisseton, and other entities known and unknown to plaintiffs, are called below "the entities."

98.     The entities are liable because they conspired with one another to commit the actions and violations of law set forth herein, and also conspired to commit the *Monell* violations set forth herein.

99.     The entities' actions and violations of law set forth herein were part of policies that were unconstitutional, as in *Monell. See Szabla v. City of Brooklyn Park,* 486 F.3d 385, 389 (8th Cir.2007) (*en banc*).

100.    The entities' actions and violations of law set forth herein were part of a deliberate choice by the entities to follow a course of action that was made from among various alternatives by city policymakers, including but not limited to the alternative of testing for drugs by a blood sample, as done throughout much of the rest of the state, instead of through a urine sample obtained by forced catheterization. *See Szabla v. City of Brooklyn Park,* 486 F.3d 385, 390 (8th Cir.2007) (*en banc*).

18

101.   Even if the entities' policies are deemed constitutional on their face, the entities should have done more to prevent constitutional violations by their employees, and a "policy" existed in that the inadequacies were a product of deliberate or conscious choice by policymakers. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir.2007) (*en banc*).

102.   Even if the entities' policies are deemed facially lawful, the entities, acting through their policymakers, were deliberately indifferent to the constitutional rights their employees violated, as set forth herein. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 391 (8th Cir.2007) (*en banc*), citing *Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir. 1981).

103.   The entities, and other government entities known and unknown to plaintiffs, used inadequate training practices; were deliberately indifferent to the constitutional rights of plaintiffs and others, such that the failure to train reflects a deliberate or conscious choice by the entities; and the deficient training procedures actually caused constitutional injury to plaintiffs and many others like them.   *See Oliver v. County of Gregory*, 2016 U.S. Dist. Lexis 29130 * 45 (D.S.D., Central Division).

104.   The entities' constitutional violations set forth herein were more than a one-time occurrence, i.e., the actions were taken in accordance with a policy or

custom, and the entities failed to create a constitutional policy or custom despite a pattern of similar constitutional violations making additional policies necessary. *See Mortensbak v. Butler*, 102 F. Supp. 3d 1085, 1101 (D.S.D., Central Division 2015). *See also Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978) ("local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.")

105.   The entities' constitutional violations set forth herein were part of a widespread practice with the force of law. *See Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 691 (1978), quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-168 (1970) ("Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law" (brackets and ellipsis in original). *See also Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006), and *Jackson v. Mario County*, 66 F.3d 151, 152 (7th Cir. 1995).

20

WHEREFORE, plaintiffs request:

1.      Injunctive relief declaring that defendants' conduct unconstitutional and barring such conduct in the future;

2.      Compensatory and punitive damages;

3.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

4.      Such other and further relief as the Court deems just.

Dated:  June 29, 2017        /s/ James D. Leach
                             James D. Leach
                             Attorney at Law
                             1617 Sheridan Lake Rd.
                             Rapid City, SD 57702
                             (605) 341-4400 tel
                             (605) 341-0716 fax
                             jim@southdakotajustice.com

                             /s/ Courtney A. Bowie*
                             Courtney A. Bowie
                             Legal Director
                             American Civil Liberties Union of South Dakota
                             P.O. Box 1170
                             Sioux Falls, SD 57101
                             (201) 284-9500 tel
                             (605) 332-5648 fax
                             cbowie@aclu.org
                             *Application for Admission Pro Hac Vice filed herewith

                             Attorneys for Plaintiffs

21

## Demand for Jury Trial

Plaintiffs respectfully demand a jury trial.

/s/ James D. Leach
James D. Leach